Shaw, C. J.
This case is somewhat complicated in its facts, but when understood, we think it presents no question of great difficulty. The insurance was on the property and interest of Bemis and Bemis, payable to Macomber, mortgagee, in case of loss. The insurance was not upon the interest of Macomber; but the undertaking to pay him was a collateral and derivative contract, growing out of the principal contract with the assured, by which the company stipulated to pay to the appointee of the assured, when a loss should become payable, instead of paying to the fissured himself. The ordinary effect of such a contract between the three parties is, that if the assured, whose property and interest alone are covered, should aliene before a fire, he would sustain no damage, there would be no loss, for which the insurers would be responsible, and, therefore, the contingency, upon which the appointee, by the terms of the contract, would have a right to claim, could not happen. In general the assured must have an insurable interest, at the time of the damage by fire, as well as at the time of effecting the policy, in order to recover. Wilson v. Hill, 3 Met. 66; Murdoch v. Chenango Co. Mut. Ins. Co., 2 Comst. 210. But the policy and by-laws, which constitute together the contract of the company, contain an express stipulation, that no mortgaged estate shall be deemed to be alienated, until the mortgage shall be foreclosed And an? *136 policy payable to a mortgagee in case of loss, shall continue so payable, notwithstanding any subsequent alienation of the estate. So far, therefore, as this policy was concerned, an alienation by the assured would not bar the right of the appointee or assignee to claim, when the loss should happen.
This stipulation, to pay Macomber in case of loss, was a provisional promise to pay a sum of money in the nature of a debt, and the assignment of it to Cloyes, and Cloyes’s assignment to Wheeler, was the assignment of a chose in action, which vested an equitable interest in the assignee, which, in case the contingency should happen, and the obligation to pay become absolute, the assignee might sue for in the name of his assignor.
The remaining question is, whether this liability of the company did remain, in the events which occurred, until the happening of the loss by fire.
Taking the stipulation in the policy and the provision in the by-laws together, the true construction is, that although the insurance is not upon the interest of the mortgagee, and although the undertaking by the company to pay the mortgagee in case of loss is collateral and derivative, yet the stipulation is so made, because he is mortgagee, and for the better security of the mortgage debt. If therefore the mortgage is paid, foreclosed, or otherwise discharged and extin guished, such separate and collateral promise to pay the mortgagee would be determined.
The question therefore is, whether this mortgage was foreclosed. It appears that Wheeler first became the purchaser of the equity of redemption, and then took an assignment of the mortgage. Whether, in terms, he took the estate from the widow and heirs, and the surviving mortgagor, subject to the mortgage, or not, or as an equity of redemption, we do not think very material, because, in point of law, it was an equity, and was subject to that mortgage. Now, the court are of opinion, that when he legally acquired the entire equity of redemption, and then took an assignment of the mortgage, the two interests coalesced, and worked a merger, which vested in him an estate in fee, and effectually foreclosed the mortgage. After *137 such union of the mortgage and the equity of redemption, of whom, as mortgagee, could he redeem, but of himself? Upon whom could he enter to foreclose but himself? On whom did he enter on the 24th September, 1847, for the purpose, as it is said, of foreclosing, but on himself?
It is said in argument, that he had a right to keep both estates open, for the purpose of foreclosing, and the better securing of his title. If indeed there had been any outstanding mortgage, attachment, or other real lien, which might intervene between his mortgage and his right of redemption, it might upon common principles have prevented a merger, and he would be entitled to stand upon both his rights. But there was no such intervening lien or real interest. The mortgage and the equity became merged, and this was a foreclosure, and primd facie a payment of the mortgage debt. What would have been the effect of an attempt to enforce payment of the mortgage note as a personal contract, we need not consider, because no such attempt was made. The court are therefore of opinion, that the mortgage was foreclosed before the loss by fire, and that the assignee cannot recover.

Plaintiff nonsuit.